7 N.J. Super. 41 (1950)
71 A.2d 725
MARY GRACE GIRESI, PLAINTIFF-RESPONDENT,
v.
E.I. duPONT DE NEMOURS & COMPANY, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1950.
Decided March 10, 1950.
*42 Before Judges COLIE, EASTWOOD and JAYNE.
Mr. John W. O'Brien argued the cause for appellant (Messrs. O'Brien, Brett & O'Brien, attorneys).
Mr. Edward J. Abromson argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.S.C.
Did the competent and credible evidence in this action adequately sustain the determination of facts and consequent judgment of the Hudson County Court concluding that the permanent disability of the plaintiff resulted from an accident arising out of and in the course of her employment? The Deputy Director of the Division of Workmen's Compensation and the Hudson County Court both resolved that controversial issue in favor of the plaintiff.
If their conclusions rest upon competent evidence, they ought not to be overthrown incautiously. Mason v. Evans, 5 N.J. Super. 338 (App. Div. 1949).
For some period of time prior to the alleged accident on November 20, 1947, the plaintiff was employed by the defendant to operate a slurring machine in the teflon department at its Arlington plant. The machine may be generally described as a container into which the proportions of powder and water are imported and then agitated. It is imperative to close the aperture in the receptacle after the admission of the materials by the insertion of a rubber stopper weighing about one-half pound and to maintain it in its position during the churning period. It was pragmatical and expedient *43 to seat the stopper firmly to prevent its dislodgment or ejectment by the operation of the apparatus.
It was on November 20, 1947, in the pursuit of this occupation that the plaintiff, in her endeavor securely to install the stopper by means of the exertion of pressure with her right arm and shoulder, sensed an acute and painful "click" or "crack" in the area of her right shoulder and neck. Proof of the occurrence of the alleged mishap is reinforced by the testimony of the shop foreman who recalls that the plaintiff at once informed him of her anguish and that he forthwith issued to her a "pass" entitling her to treatment at the company hospital. Additional confirmation is available in the testimony of the attending nurse and in the contemporaneous records of the infirmary.
The plaintiff's injury is classified as a subluxation of the right sternoclavicular articulation. Dr. Visconti testified that the subluxation "is an accidental condition" and "would not come on with the ordinary occupational hazard." The X-rays did not reveal any bone disease in the region of the right sternoclavicular articulation.
The appellant more vigorously impugns the finding that a causal relationship between the alleged accident and the injury has been evidentially established. We recognize that the proof of that essential element of the plaintiff's case is somewhat frail, but from a comprehensive survey of all of the circumstances disclosed by the evidence and the permissible inferences drawn therefrom, we are of the opinion that there is competent evidence upon which the judgment for the plaintiff can be based.
The following excerpts from the testimony of the witness Mary Starzecky are noteworthy:
"Did you see * * * the front part of the collarbone?"
"Yes, I seen it right after that happened; when she got hurt."
"And you saw her today also,"
"And I seen her today. It is the same."
"Did you see her before November 1947?"
"Oh, yes * * *"
"And did she have that before that time?"
"No * * *"
*44 An abnormality was observed at the hospital and catalogued as a "swelling."
The examination of the plaintiff by the appellant's physician revealed "a definite forward displacement of the medial end of the right clavicle." The testimony of Mary Starzecky generates the inference that the protrusion was discernible "right after" the accident, did not noticeably exist before, and is "the same."
It is insisted that the answer to the pertinent hypothetical question addressed to Dr. Visconti is valueless in that it embraced as a postulate the circumstance that there was an "immediate raising of the bone." Bayonne v. Standard Oil Co., 81 N.J.L. 717 (E. & A. 1910). The propriety of the hypothesis, however, must be estimated in the light of the testimony to which we have already referred. Some probative regard is accorded to the testimony of Dr. Visconti given in response to a question entirely disassociated in which he expressed the conviction that even though the plaintiff may have had symptomatic complaints referable to her shoulder antedating the accident, the occurrence of November 20, 1947, caused the subluxation.
The judgment under review is affirmed.
COLIE, J.A.D., dissenting.
I am unable to agree with my colleagues for the following reasons:
In order to establish a causal relationship between the incident of November 19th or 20th, 1947, and the permanent disability for which an award was made, the plaintiff called Dr. Joseph A. Visconti and he was asked the following hypothetical question: "* * * Now, bearing in mind your findings and considering the history of an accident given by the petitioner, Mary Grace Giresi, to the effect that on November 20, 1947, while in the employ of the respondent, she was pressing down on a rubber stopper, pushing with right arm, felt a click and pain in the right collar bone and an immediate raising of the bone, reported that to the company first-aid clinic and received treatment intermittently for about a year, would you say that the incidents I have described and *45 your findings would show any causal relationship? A. In my opinion, there is causal relation."
The nature of the injury was described by the doctor as "a subluxation of the right sternoclavicular articulation." "Subluxation" is synonymous with "dislocation." Gould's Medical Dictionary, 2nd Edition.
The burden of proof was upon the employee to establish a causal relation between the alleged "accident" and the injury, and the only evidence in this case of such causal relationship is to be found, if at all, in Dr. Visconti's answer to the hypothetical question above quoted. In the hypothetical question, the plaintiff included a hypothesis of an "immediate raising of the bone" and this record will be searched in vain for testimony to that effect. It is settled law that a hypothetical question to an expert witness based on facts not in evidence is erroneous. Bayonne v. Standard Oil Co., 81 N.J.L. 717 (E. & A. 1910). Cf. Schwartz v. Howard Savings Institution, 117 N.J.L. 180 (E. & A. 1936).
There being, in my opinion, no legal evidence in the case to support a finding of causal relationship, I would vote to reverse the judgment.